Application of COMMERCIAL CARRIER CORPORATION, et al.

No. 5492-CCT.

Railroad & Public Utilities Commission.

January 12, 1959.

William P. Tomasello, Bartow, for the applicant, Commercial Carrier Corporation.

Warren E. Hall, Jr. and James H. Sweeny, Jr., both of DeLand, for the applicant, Tropical Transport, Inc.

A. Pickens Coles, Tampa, for Central Truck Lines, Inc., Great Southern Trucking Co., Inc., Tamiami Trail Tours, Inc., M. R. & R. Trucking Co., Overseas Transportation Co., and South Florida Freightways, Inc., protestants.

BY THE COMMISSION.

Pursuant to statutory notice, the commission, by its duly designated examiner, Alfred E. Sapp, held a public hearing on this application in the commission's hearing room at 2526 W. Flagler St., Miami, on October 8, 1958.

Following the hearing the examiner filed his report and recommendations in the form of a proposed order wherein he recommended that the application be granted and the transfer approved. Thereafter the protestants filed exceptions to the proposed order and the joint applicants filed a memorandum in support of the proposed order. Oral argument of counsel for the parties was heard by the commission. After consideration of the entire record in this matter the commission now enters its order in the premises.

Approval is here sought for the transfer of a portion of a state-wide certificate authorizing transportation as a common carrier of a number of commodities, among which are cement, including mortar mix and any combination of any cement with either lime and/or sand or gravel and/or any other aggregate, to be transported in bulk, bags, boxes or any other type of containers. The portion sought to be transferred includes only cement and the commodities related thereto as set forth above and only as to shipments originating at points located in Flagler County and points located in that part of Dade County lying north of the Tamiami Trail (U. S. Route No. 41) and west of S.W. and N.W. 72nd Avenue in the City of Miami, and a projection thereof north to the Dade County line.

Pursuant to the provisions of section 323.041, Florida Statutes, the commission gave notice of filing under date of July 22, 1958. Central Truck Lines, Inc., Great Southern Trucking Co., Tamiami Trail Tours, Inc., M. R. & R. Trucking Co., Overseas Transportation Co., and South Florida Freightways, Inc., protestants, through their counsel and within the time prescribed by said notice and on August 5, 1958, filed objections to the proposed transfer.

At the present time there are four plants engaged in the manufacture and production of cement. Two of these plants are owned and operated by the Lehigh Portland Cement Co., one located in Flagler County, the other in that part of Dade County lying north of the Tamiami Trail (U. S. Highway No. 41) and within the origin territory sought to be transferred. The other two plants, operated by the General Portland Cement Co., are located in Tampa and just south of the Tamiami Trail (U. S. Highway No. 41) in the western part of Dade County, and within a few miles of the Lehigh Portland Cement plant lying just north of the Tamiami Trail.

The president of Commercial Carrier Corporation testified that his company would continue to transport cement and any combination thereof between all points in Florida over irregular routes, with the exception of the origin points in Flagler County and a portion of Dade County sought to be transferred to Tropical Transport, Inc.

The president of the transferee, Tropical Transport, Inc., testified that, upon the grant of the transfer, his company would transport cement and any combination thereof between the designated origin points and all points in Florida over irregular routes.

The effect of the proposed transfer will be to divide the certificate both as to commodities and as to territory. Sub-section (4) of section 323.041, Florida Statutes provides—

> A certificate may be divided as to route or territories, and part thereof transferred, sold, or assigned, provided the commission finds that such routes or territories are clearly severable and the division thereof does not permit the creation of duplicate operating rights. No division of certificate rights, by sale, transfer or assignment based upon the class or classes of property authorized to be transported shall be approved, unless it appears to the satisfaction of the commission that the part of the operating rights sought to be transferred, sold or assigned is, because of a difference in the nature or type of the service rendered, considering the type of vehicle and characteristics of the customers served, clearly distinguishable and severable from the remaining operating rights; provided, however, certificates which authorize transportation of general freight or of a specified general class of freight which class would include other classes as an integral part thereof may not be severed as to any commodity or class falling within such overall general class specified in the certificate.

As to *territory*, it is the finding of the commission that the portion of the certificate sought to be transferred is clearly severable. It will create no duplicate operating rights if in connection with the transfer authority is withdrawn from the transferor to originate shipments of the commodities involved in the described territory. Such will be done upon the formal cancellation of this certificate and reissuance of the authority to the transferor and transferee. After the transfer only the transferee will have the right to originate shipments of cement and the other related commodities in Flagler County and the specified portion of Dade County.

As to *commodities*, the commission finds that the portion of the certificate sought to be transferred is clearly distinguishable and severable from the remaining operating rights. This proposed transfer encompasses only commodities which are specifically named in the certificate authority, which commodities were authorized to be transported by a separately issued order of this commission, order #3000, entered on August 12, 1954 in docket #3851-CCT. These were the only commodities authorized by said order. This does not involve transfer of a part of a specified general class of freight which is prohibited by sub-section (4) of section 323.041, supra.

The commission further finds that—(1) The approval of the joint application is not contrary to the public interest. (2) The certificate involved has not been dormant for more than six months. (3) Tropical Transport, Inc. is financially able to carry out the rights involved in the proposed sale. (4) Tropical Transport, Inc., through its officers, agents, and employees, has the experience and equipment necessary to carry out the rights involved in the joint application. (5) The applicants have complied with all conditions precedent to the consideration of their application by the commission.

It is therefore ordered that the transfer of that portion of certificate of public convenience and necessity #480 as hereinabove described be and it is hereby approved.

It is further ordered that upon effecting the transfer of said portion of said certificate the joint applicants notify the commission of such action in order that said authority may be canceled and reissued to the transferor and transferee in accordance with the division thereof as hereinabove set forth.

Chairman JERRY W. CARTER considers that approval of this transfer should be denied and therefore dissents.